UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | } |
| Plaintiff, | } |
| v. | } 2:23-cr-00227-MHH-JHE-1 |
| DENNIS DEWAYNE DOTHARD, | } |
| Defendant. | } |

**MEMORANDUM OPINION AND ORDER**

In defense of the Hobbs Act robbery and firearm charges against him in this case, Mr. Dothard has asked the Court to exclude from evidence a cellphone law enforcement seized on January 13, 2020, from a wrecked 2018 Jeep. Mr. Dothard also has asked the Court to exclude from evidence the contents of the phone. (2:23-cr-00227-MHH-JHE-1, Doc. 36). Based on the evidence the Court received during the January 18, 2024, hearing in this matter, the Court denies Mr. Dothard's motion to suppress the phone but grants his request to suppress the phone's contents and directs the United States to refrain from executing a search of the phone's contents.

**I.**

The timeline for this case is significant to the Court's decision. Evidence introduced during the suppression hearing indicates that on January 13, 2020, Alabama State Trooper Donald Butler responded to a call regarding a red Jeep SUV

that purportedly was involved in an armed robbery in Hoover, Alabama. (23-227, Doc. 37, pp. 6–7).[1] Shortly after he received a BOLO from dispatch regarding the Jeep, Trooper Butler received notification from dispatch of a traffic accident near him, so he proceeded to the accident location. (23-227, Doc. 37, pp. 6, 8). When Trooper Butler arrived at the accident location, he found a red Jeep in the grassy area between the I-20 west and I-20 east exit lanes. (23-227, Doc. 37, pp. 9–10, 21–22, GX4). An Alabama Service Patrol employee was at the location helping the individuals whose vehicle had crashed with the red Jeep. (23-227, Doc. 37, pp. 10–11). The Jeep was badly damaged; it was inoperable. (23-227, Doc. 37, pp. 12, 24, 44–45). The front driver's side door was open, and the vehicle was not occupied. (23-227, Doc. 37, pp. 12, 23). The ASAP employee told Trooper Butler that the Jeep's driver had crossed the lanes of traffic beside the grassy area and run into the woods on the other side of the highway. (23-227, Doc. 37, pp. 12–13; *see also* 23-227, Doc. 37, pp. 40–43, 50, 56). During the 90 minutes or so that Trooper Butler was on the scene, no one returned to claim the Jeep or its contents. (23-227, Doc. 37, pp. 13, 18, 21).

---

[1] As the Court will discuss, this case, 23-cr-00227-MHH-JHE, is the second the United States has brought against Mr. Dothard. The first was 20-cr-00147-MHH-GMB. In this opinion, to differentiate between documents in the two cases, the Court includes "20-147" in cites to records in the 2020 case and "23-227" in cites to records in the 2023 case.

An investigations lieutenant with the Hoover Police Department, Lt. Quattlebaum, arrived at the crash scene. (23-227, Doc. 37, pp. 47–48).[2] Lt. Quattlebaum had the Jeep towed to HPD's secure lockup. (23-227, Doc. 37, pp. 54, 61). Although Lt. Quattlebaum could not recall how long she was at the scene of the wreckage, while she was there, Mr. Dothard returned to the scene in police custody. (23-227, Doc. 37, pp. 56–57).

On January 14, 2020, HPD obtained a state search warrant and recovered several items from the Jeep including two cellphones. (23-227, Doc. 37, pp. 55–56, 91). Shortly after HPD recovered the cellphones from the red Jeep, HPD brought the phones to the United States Secret Services's Cyber Fraud Task Force Laboratory and stored the phones there in "a 'powered off' state" pursuant to the Lab's policy "and forensic standards." (23-227, Doc. 36-2, p. 7, ¶ 30). On January 27, 2020, HPD obtained a state warrant to search the content of both cellphones. (23-227, Doc. 36-2, p. 7, ¶ 31).[3] Forensic examiners inspected the phones the following day. The examiners determined that the phones could not be accessed forensically at the time without a PIN code. (23-227, Doc. 36-2, pp. 7-8, ¶¶ 32, 34;

---

[2] At the time of the accident, Lt. Quattlebaum was a sergeant. (Doc. 37, p. 48).

[3] The January 27, 2020, search warrant application does not appear in the record. (23-227, Doc. 37, pp. 78-79). The January 14, 2020, warrant application and search warrant appear in the record at 23-227, Doc. 36-1. The January 14, 2020, warrant authorized HPD to search the data contained in the cellphones found in the red Jeep. (23-227, Doc. 36-1, p. 4).

Doc. 37, p. 92). HPD returned the phones to secured storage. The phones have remained in secured storage since January 28, 2020. (23-227, Doc. 36-2, p. 8, ¶ 35).

The United States adopted the state's case against Mr. Dothard on March 4, 2020. (Case 2:20-mj-0062-GMB, Doc. 1). On May 28, 2020, a federal grand jury indicted Mr. Dothard in case 2:20-cr-00147-MHH-GMB for an alleged Hobbs Act robbery and for use of a firearm during the alleged robbery. (20-147, Doc. 1). In January 2021, after several delays, (20-147, Docs. 4, 8, 13, 15, 18), the Court set this case for a pretrial conference in March 2021 and scheduled trial to begin on Monday, April 19, 2021. (20-147, Doc. 26, p. 1; Doc. 28). During the year between the government's adoption of the case against Mr. Dothard and the pretrial conference, the government did not request a search warrant to attempt to access the data on the phones. (*See* 20-147, Docs. 1–31).

Days before the pretrial conference, Mr. Dothard moved to disqualify his attorney, and his attorney moved to withdraw. (20-147, Docs. 29, 30). Consequently, the Court converted the pretrial conference to a hearing on those motions. (20-147, Doc. 31). Based on the Court's observations during the hearing and the information available to the Court concerning Mr. Dothard's mental health history, the Court ordered Mr. Dothard to undergo a psychological evaluation. (20-147, Doc. 32). The Court received a report regarding Mr. Dothard's evaluation on September 24, 2021. (20-147, Doc. 40-1). Following a competency hearing,

Magistrate Judge Borden found that Mr. Dothard was not competent to proceed to trial. Judge Borden placed Mr. Dothard in BOP custody for mental health treatment to try to restore Mr. Dothard to competency. (20-147, Doc. 44). The effort was successful, (20-147, Doc. 46), and Mr. Dothard returned to the Northern District of Alabama for further proceedings. (20-147, Docs. 48, 57).

On February 7, 2023, Judge Borden granted Mr. Dothard's request for a new attorney. (20-147, Doc. 52). On March 13, 2023, Mr. Dothard's new attorney moved to dismiss the indictment for several reasons. (20-147, Doc. 59). On June 5, 2023, the Court dismissed the 2020 indictment against Mr. Dothard without prejudice based on a violation of the Speedy Trial Act. (20-147, Doc. 65). The same day, the United States filed a complaint against Mr. Dothard and sought a warrant for his arrest. (Case 2:23-mj-00171-JHE, Doc. 1). The government did not seek a warrant to forensically examine the phones found in the red Jeep.

A grand jury indicted Mr. Dothard in this case in June 2023. (23-227, Doc. 4). The government did not seek a warrant to forensically examine the phones found in the red Jeep. On July 14, 2023, the Court placed this case on the September 5, 2023, trial docket. (23-277, Doc. 9). On July 22, 2023, Mr. Dothard moved to dismiss this case for an alleged violation of his right to a speedy trial and his right to due process. (23-227, Doc. 11). The Court denied the motion on November 8, 2023. (23-227, Doc. 15). The government did not seek a warrant to forensically examine

5

the phones found in the red Jeep. On November 29, 2023, the Court set this case for trial on December 18, 2023. (23-227, Doc. 17).[4] The government did not seek a warrant to examine the phones. Two weeks before trial, Mr. Dothard's attorney moved to withdraw. (23-227, Doc. 20). The Court granted the motion and appointed a new attorney to represent Mr. Dothard. (23-227, Docs. 23, 27). Following a January 4, 2024, telephone status conference to discuss trial planning, (23-227, Jan. 4, 2024 minute entry), on January 10, 2024, the Court set the case for trial on February 26, 2024, (23-227, Doc. 33).

In preparing Mr. Dothard's defense, Mr. Dothard's third attorney asked the government to return Mr. Dothard's cellphone to him or to allow him to examine the phone pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. (23-277, Doc. 36, pp. 2-3). The government refused the request. The attorneys for the government indicated that the government planned to seek a search warrant for the phone, so defense counsel could not review the phone. (23-227, Doc. 36, p. 3).

In the January 10, 2024, affidavit that he prepared to support the government's request for a warrant to forensically search Mr. Dothard's cellphone, the government's agent stated that in the nearly four-year gap between Mr. Dothard's state arrest and January 4, 2024, the software on Mr. Dothard's cellphone "aged and

---

[4] During the suppression hearing in this matter, the Court mistakenly stated that the Court set the December 18, 2023, trial date on January 29, 2023. (23-227, Doc. 37, p. 106). The Court set the December 2023 trial date on November 29, 2023. (23-227, Doc. 17).

6

[had] not been updated," making the phone more vulnerable to forensic analysis, especially given updates to the software that law enforcement uses to access secure phones. (23-227, Doc. 36-2, p. 8, ¶¶ 36–38). On January 10, 2024, Magistrate Judge Cornelius issued a warrant for a forensic examination of the contents of Mr. Dothard's phone to allow the government to search for GPS location data, call logs, text messages, and photos. (23-227, Doc. 36-2, pp. 14–21; Doc. 37, pp. 100–02).

On January 17, 2024, Mr. Dothard asked the Court to order the government to return his phone and to "suppress any evidence obtained therefrom under Rule 12" of the Federal Rules of Criminal Procedure. (23-227, Doc. 36, p. 1).[5] The Court held a hearing on the motion to suppress on January 18, 2024. (23-227, Doc. 37).

During the suppression hearing, the government's agent testified that three factors may affect access to a locked cellphone: the phone's chipset, the manufacturer of the phone, and the software on the device. (23-227, Doc. 37, p. 92). Over the years, the software that allows law enforcement to "break into" locked cellphones, Cellebrite, has improved. (23-227, Doc. 37, pp. 93-95). Two years ago, FBI Birmingham obtained a basic subscription to Cellebrite; the Hoover cyber task force and FBI Huntsville have premium subscriptions. (23-227, Doc. 37, pp. 93-94). The Huntsville lab has had a premium subscription for approximately two

---

[5] Because Mr. Dothard requests only his phone, this order evaluates only that device. Mr. Dothard does not claim an interest in the other cellphone HPD found in the red Jeep.

years.  (23-227, Doc. 37, pp. 93-94).  As Cellbrite releases updates, the government's search capabilities expand.  (23-227, Doc. 37, p. 94).  At no time between the FBI's acquisition of its Cellbrite license approximately two years ago and January 10, 2024 did the government seek a warrant to forensically examine Mr. Dothard's phone.  (23-227, Doc. 37, p. 97).

## II.

The Fourth Amendment governs Mr. Dothard's effort to suppress evidence related to the cell phones HPD found in the red Jeep.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. AMEND. IV.  The prohibition on unreasonable searches and seizures require law enforcement officers to obtain a warrant for a search unless the circumstances surrounding the search trigger an exception to the warrant requirement.  *Riley v. California*, 573 U.S. 373, 382 (2014).  The government bears the burden of proving an exception to the warrant requirement. *United States v. McGough*, 412 F.3d 1232, 1237 n.4 (11th Cir. 2005).

The government argues that the abandonment exception to the warrant requirement overcomes Mr. Dothard's Fourth Amendment challenge to use of the cellphones themselves as evidence in his case, and the January 2024 warrant for a

8

forensic search of Mr. Dothard's cellphone defeats Mr. Dothard's Fourth Amendment challenge to the government's use of information obtained through that anticipated forensic search. (Doc. 37, p. 77). The government has carried its burden of establishing the abandonment exception to the Fourth Amendment's warrant requirement for the phones themselves, but the government has not established that the multi-year delay in its effort to search the contents of Mr. Dothard's phone satisfies the Fourth Amendment's reasonableness requirement.

## A.

With respect to the abandonment exception, the Eleventh Circuit Court of Appeals has held that an individual forfeits his privacy interest in a vehicle when he abandons the vehicle. *United States v. Falsey*, 566 Fed. Appx. 864, 867 (11th Cir. 2014). Abandonment is a question of intent, and a district court may infer intent based on "acts, words, and other objective facts." *Falsey*, 566 Fed. Appx. at 866. "In the motion to suppress context, '[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" *Falsey*, 566 Fed. Appx. at 867 (*quoting United States v. Williams,* 569 F.2d 823, 826 (5th Cir. 1978)). A defendant may not contest the seizure of evidence as violative of the Fourth Amendment if the

defendant abandoned the evidence. *United States v. Jefferson*, 451 Fed. Appx. 833, 834 (11th Cir. 2011).

In *Falsey*, the defendant, believing the police were pursuing him, parked his car in a parking lot and sprinted into the woods, leaving his car unlocked and the keys inside the vehicle. *Falsey*, 566 Fed. Appx. at 865. The Eleventh Circuit held that in doing so, Mr. Falsey "voluntarily relinquished his interest in the car such that he no longer had a reasonable expectation of privacy in it or its contents" when law enforcement impounded and conducted a warrantless search of the vehicle. *Falsey*, 566 Fed. Appx. at 868. Therefore, Mr. Falsey could not assert a Fourth Amendment challenge to evidence found in the car. *Falsey*, 566 Fed. Appx. at 868 (citations omitted).

Assuming for purposes of this discussion that Mr. Dothard was driving the red Jeep, Mr. Dothard abandoned the vehicle on January 13, 2020, when he left the vehicle in the grassy area between lanes of traffic on I-20 and ran into the woods. When Mr. Dothard arrived at the accident scene sometime later, he was in police custody. (23-227, Doc. 37, p. 57). Mr. Dothard did not claim an interest in the Jeep or the contents of the Jeep.

Moreover, HPD obtained a warrant to search the Jeep after the Jeep was towed to a secure location. (23-227, Doc. 36-1). Though Mr. Dothard criticizes the affidavit provided for the warrant, (23-227, Doc. 36, pp. 4-8), it is undisputed that

HPD recovered the phones from the Jeep pursuant to a state search warrant. (23-227, Doc. 37, pp. 55-56, 91). Consequently, the Court denies Mr. Dothard's motion to suppress the existence of the cellphones from evidence.

## B.

The abandonment exception does not frustrate Mr. Dothard's motion with respect to the contents of the cellphone that he has asked the government to return to him. The PIN code that Mr. Dothard used to lock his phone demonstrates his continued interest in the privacy of the contents of his phone.[6] The delay in the government's effort to review the contents of the phone is unreasonable as is the government's decision to seek a search warrant only after Mr. Dothard asked to have the phone to prepare his defense.

"[E]ven with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable." *United States v. Mitchell*, 565 F.3d 1347, 1350-51 (11th Cir. 2009) (quoting *United States v. Respress,* 9 F.3d 483, 488 (6th Cir. 1993)).

> The reasonableness of the delay is determined "in light of all the facts and circumstances," and "on a case-by-case basis." *United States v. Mayomi,* 873 F.2d 1049, 1054 n. 6 (7th Cir.1989). "[T]he reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Soldal v. Cook County,* 506 U.S.

---

[6] *See generally Riley v. California*, 573 U.S. 373, 392 (2014) ("The fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely.").

>56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *see also United States v. Prevo,* 435 F.3d 1343, 1345 (11th Cir. 2006).

*Mitchell*, 565 F.3d at 1351.

Here, as in *Mitchell*, the private possessory interest at stake is substantial. In *Mitchell*, the Eleventh Circuit was concerned with the defendant's access to his home computer. The Eleventh Circuit explained:

>Computers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on their computer hard drives. Thus, the detention of the hard drive for over three weeks before a warrant was sought constitutes a significant interference with Mitchell's possessory interest . . . a home computer's hard drive is likely to contain other, non-contraband information of exceptional value to its owner.

*Mitchell*, 565 F.3d at 1351. In *Riley v. California*, the United States Supreme Court extended this rationale to cellphones. 573 U.S. 373 (2014). The Supreme Court discussed extensively the privacy interests implicated by the search of the contents of a cellphone. *Riley*, 573 U.S. at 393–98. The Supreme Court stated: "The term 'cellphone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley*, 573 U.S. at 393. Thus, there is no meaningful distinction between the substantial privacy

12

interest that Mr. Mitchell had in his home computer and the substantial privacy interest Mr. Dothard has in his cellphone.

And, as in *Mitchell*, "there was no compelling justification" for the government's decision to wait years to seek a warrant to conduct a forensic search of Mr. Dothard's cellphone. As noted, the government adopted the state case against Mr. Dothard on March 4, 2020, (20-mj-62, Doc. 1), and the government obtained a federal indictment against Mr. Dothard on May 28, 2020, (20-147, Doc. 1). By the time Mr. Dothard was indicted federally, his cellphone had been in state custody for approximately four months. The government no doubt was aware that HPD, in conjunction with the United States Secret Service's Cyber Fraud Task Force, had not been able to access the phone in January 2020, so the government's decision to not search the phone immediately does not make the delay in this case reasonable. Though a bit less compelling, the government's inaction while Mr. Dothard was evaluated and restored is not entirely unreasonable because there was a possibility that Mr. Dothard would not be restored, so the government reasonably could wait to see whether it would be able to move forward with the indictment against Mr. Dothard. Likewise, when Mr. Dothard returned to this district and moved to dismiss the first indictment against him, it was not unreasonable for the government to wait

to see whether Mr. Dothard would be successful in his speedy trial arguments for dismissal of the charges against him with prejudice.[7]

The scale tips toward substantially unreasonable after the government obtained a new indictment against Mr. Dothard in June 2023. (23-227, Doc. 4). On July 14, 2023, the Court placed this case on the September 5, 2023 trial docket. (23-277, Doc. 9). By July 2023, the software on Mr. Dothard's cellphone had "aged and [had] not been updated," making the phone more vulnerable to forensic analysis, and updates to the software that law enforcement uses to access secure phones increased the likelihood that an attempt to access the data on Mr. Dothard's locked cellphone would be successful. (23-227, Doc. 36-2, p. 8, ¶¶ 36–38). By July 2023, the FBI had had a license in this district for Cellebrite, the program law enforcement uses to access cellphones for forensic examination, for approximately 18 months, and the sophistication of the program was improving monthly. (23-227, Doc. 37, p. 94). A September 5, 2023 trial date did not prompt the government to apply for a warrant to search the contents of either phone in its custody. (23-227, Doc. 37, p. 97).

On July 22, 2023, Mr. Dothard filed a motion in which he asked the Court to dismiss the indictment in this case based on the government's alleged violation of

---

[7] In discussing the reasonableness of the government's action—or inaction, the Court is speaking in objective terms. Nothing in the record suggests that the government actually gave a thought to Mr. Dothard's cellphone during the three years that the original indictment against Mr. Dothard was pending.

14

his right to a speedy trial and to due process. The Court resolved the motion on November 8, 2023. (23-227, Doc. 15). Though it may have been reasonable for the government to pause its discovery efforts in the 2020 case when Mr. Dothard moved to dismiss the first indictment against him, the passage of time made a pause in July 2023 substantially less reasonable. The government undoubtedly was aware of the need to bring Mr. Dothard to trial as quickly as possible on the new indictment, given the age of the evidence in this case. If the government was genuinely interested in the evidence on Mr. Dothard's cellphone, there was no reason for the government to wait to request a search warrant following the Court's November 8, 2023, order.

Delay persisted when, on November 29, 2023, the Court set this case for trial on December 18, 2023. (23-227, Doc. 17). By November 29, 2023, the software on Mr. Dothard's phone had aged even more, and the Cellebrite software had become more facile and sophisticated, but the government did not apply for a warrant to conduct a forensic examination of Mr. Dothard's phone. (23-227, Doc. 37, p. 97).

Trial was delayed one more time on December 8, 2023, when the Court appointed a new attorney to represent Mr. Dothard. (23-227, Doc. 23). But the government did not use the additional time to request a warrant to forensically examine Mr. Dothard's phone. And, given that the Court postponed Mr. Dothard's December 2023 trial date only five business days before the trial was set to begin, it is fair to infer that the government either had forgotten about the phone or made the

tactical decision not to seek a warrant to examine the contents of Mr. Dothard's phone before the December 18, 2023 trial date.

Only one thing changed between December 8, 2023 and January 10, 2024—Mr. Dothard's new attorney asked the government to return his cellphone. The government knew that there likely was no impediment to Mr. Dothard and his attorney accessing the contents of his cellphone, short of Mr. Dothard forgetting the PIN he selected for the phone during the four years the government retained the phone. Following four years of inaction, the trigger for a search warrant was Mr. Dothard's effort to review evidence that he might use in his defense at trial.

In *Mitchell*, the Eleventh Circuit found that "the excuse offered for the three-week delay in applying for a warrant" to search the hard drive of Mr. Mitchell's home computer was "insufficient." *Mitchell*, 565 F.3d at 1352. The Eleventh Circuit recognized that "there may be occasions where the resources of law enforcement are simply overwhelmed by the nature of a particular investigation, so that a delay that might otherwise be unduly long would be regarded as reasonable." *Mitchell*, 565 F.3d at 1353. On the record before it in *Mitchell*, the Eleventh Circuit concluded: "No effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush. Under these circumstances, the twenty-one-day delay was unreasonable." *Mitchell*, 565 F.3d at 1353.

The three-week delay in *Mitchell* pales in comparison to the four-year delay in this case. Even allowing for the delays in the 2020 case against Mr. Dothard and for a reasonable delay for forensic software to become more sophisticated, there simply is no reasonable explanation for the government waiting to seek a warrant to search the cellphones recovered from the red Jeep after the government obtained a second indictment against Mr. Dothard in June 2023. The order setting the government's case against Mr. Dothard on the September 2023 trial docket would have—or at least should have—prompted reasonable actors to apply for a warrant to examine the phones found in a vehicle purportedly linked to an armed robbery if the government believed it needed evidence from the phones to carry its burden at trial (or to negotiate a plea agreement). The Court previously has recognized, (20-147, Doc. 65, pp. 26–27), and continues to recognize, the seriousness of the charges against Mr. Dothard. The nature of Mr. Dothard's alleged crime gives the public a substantial interest in potential evidence on Mr. Dothard's cellphone that might be useful to the government's prosecution. But that is the very reason the government should have pursued the evidence in a timely fashion after the government obtained a second indictment against Mr. Dothard in June 2023.

And an assessment of reasonableness cannot be divorced from the fact that the government applied for a search warrant only after Mr. Dothard asked for the opportunity to review the contents of his phone to prepare his defense. Mr. Dothard

17

is entitled to develop exculpatory evidence, and evidence that the government has allowed to lay dormant for months, if not years, does not suddenly become indispensable to the government's case simply because Mr. Dothard seeks exculpatory evidence that may exist on his cellphone—evidence that the government would have had to provide to Mr. Dothard anyway had the government found it in a forensic search. *See Brady v. Maryland*, 373 U.S. 83, 87–88 (1963).

Finally, though the Court did not find that the length of delay and cause of delay in the 2020 case against Mr. Dothard weighed heavily against the government with respect to a Sixth Amendment speedy trial analysis, (20-147, Doc. 65, p. 34), the government is responsible for the Speedy Trial Act violation in the 2020 case because the government did not seek an ends of justice order before the speedy trial clock expired. The government has benefitted from the delay in its prosecution of Mr. Dothard in two ways: Mr. Dothard has lost access to evidence that may have been exculpatory, (23-227, Docs. 39, 47), and the Cellebrite technology that the government needs to access the data on Mr. Dothard's cell phone has become more sophisticated every month the government opted not to request a warrant to examine Mr. Dothard's phone. Mr. Dothard is no more responsible for the delays in the 2020 case than the government. Mr. Dothard did not cause the COVID pandemic, and he opposed the Court's orders for his mental health evaluation and restoration efforts. Still, he bears the brunt of the consequences of these delays.

The Court recognizes that even if a forensic search of Mr. Dothard's phone had revealed no meaningful evidence other than the number associated with the device, the government would not have had to return the device to Mr. Dothard because the presence of a phone with a number associated with Mr. Dothard in the red Jeep would be evidence that might link him to the robbery at issue. In *Mitchell*, the Eleventh Circuit stated that the magistrate judge "correctly observed" that:

> [t]he purpose of securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that event the government would be obligated to return the container (unless it had some other evidentiary value). In the ordinary case, the sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating.

*Mitchell*, 565 F.3d at 1352. When, as here, a cellphone has "other evidentiary value" that precludes its return to the defendant, the cellphone still is "the digital equivalent of its owner's home, capable of holding a universe of private information," *Mitchell*, 565 F.3d at 1352 (quoting *Kansas v. Rupnick,* 280 Kan. 720, 125 P.3d 541, 552 (2005)), and a defendant does not forfeit his interest in the universe of private information contained in his phone even if the phone itself may be evidence of a crime. In any event, the government chose not to seek a warrant for the phone, even to see if the number associated with the device also is associated with Mr. Dothard, until Mr. Dothard asked for access to the phone. The ultimate disposition of the

phone does not change the reasonableness calculation regarding a forensic search of the contents of the phone on the particular facts of this case.

### III.

For the reasons discussed, the Court denies Mr. Dothard's motion to suppress evidence of the phones that HPD recovered from the red Jeep and grants Mr. Dothard's request to suppress the contents of his phone. (23-227, Doc. 36). The Court vacates the January 10, 2024 search warrant for Mr. Dothard's cellphone. The government shall make Mr. Dothard's cellphone available to Mr. Dothard's attorney for a review of the contents of the phone. The government may maintain custody of the phone itself for trial.

**DONE** and **ORDERED** this February 22, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE